**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 5486 |
| | ) | |
| v. | ) | Honorable Amy St. Eve |
| | ) | |
| COMCAST CORPORATION and | ) | |
| COMCAST SPOTLIGHT, LP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ...........................................................................................................1

ARGUMENT.................................................................................................................2

I.      VIAMEDIA'S ANTITRUST CLAIMS FAIL AS A MATTER OF
        LAW. ..............................................................................................................2

        A.      The Complaint Fails to State a
                Claim for a Unilateral Refusal to Deal ............................................3

                1.      Viamedia Expressly Agreed to
                        Permit the Conduct It Now Challenges. ...............................4

                2.      The Complaint Establishes that Viamedia
                        and Comcast Have a History of Competition. .....................6

                3.      The Complaint Fails to Establish that
                        Comcast's Alleged Conduct Was
                        Irrational But For an Anticompetitive Effect.......................7

        B.      Viamedia Does Not Plead Harm to
                Competition and Lacks Antitrust Standing......................................8

        C.      Viamedia Does Not Plead
                Anticompetitive Tying or Exclusive Dealing. ................................9

                1.      The Premise of Viamedia's Complaint
                        Is a Unilateral Refusal to Deal..........................................10

                2.      Viamedia's "Monopoly Leveraging"
                        Claim Fails As a Matter of Law........................................11

                3.      Viamedia Fails to State a Tying Claim.............................12

                4.      Viamedia Fails to State an Exclusive Dealing Claim........14

II.     VIAMEDIA'S STATE LAW CLAIMS SHOULD ALSO BE
        DISMISSED. ..............................................................................................15

CONCLUSION.............................................................................................................15

i

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

*188 LLC v. Trinity Indus., Inc.*,
300 F.3d 730 (7th Cir. 2002) ....................................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)............................................................................................1, 6, 7

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ..................................................................................9

*Christy Sports, LLC v. Deer Valley Resort Co.*,
555 F.3d 1188 (10th Cir. 2009) .............................................................................4, 8

*Covad Commc'ns Co. v. BellSouth Corp.*,
374 F.3d 1044 (11th Cir. 2004) ................................................................................7

*Fields v. Wilber Law Firm, P.C.*,
2003 WL 23094867 (C.D. Ill. July 22, 2003)...........................................................2

*Fishman v. Estate of Wirtz*,
807 F.2d 520 (7th Cir. 1986) ..................................................................................11

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*,
582 F.3d 1216 (10th Cir. 2009) ..............................................................................11

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984)................................................................................................12, 13

*John Doe 1 v. Abbott Labs.*,
571 F.3d 930 (9th Cir. 2009) ..................................................................................12

*Kaufman v. Time Warner*,
__ F.3d __, 2016 WL 4578639 (2d Cir. Sep. 2, 2016) ...............................................13

*Matthews v. United Retail, Inc.*,
248 F.R.D. 210 (N.D. Ill. 2008)...............................................................................10

ii

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ................................................................7, 11

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ...................................................................3, 4

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007).....................................................................3, 8

*Republic Tobacco Co. v. N. Atl. Trading Co.*,
    381 F.3d 717 (7th Cir. 2004) .......................................................................14

*Schor v. Abbott Labs.*,
    457 F.3d 608 (7th Cir. 2006) .......................................................................12

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) .........................................................................2

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919).......................................................................................6

*VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*,
    2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ...................................7, 12, 14

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).......................................................................... *passim*

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
    2014 WL 656753 (N.D. Ill. Feb. 20, 2014) ..................................................8

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984).........................................................................11

*WHDH-TV v. Comcast Corp.*,
    __ F. Supp. 3d __ , 2016 WL 2858780 (D. Mass. May 16, 2016)................4

P<small>AGE</small>(S)

O<small>THER</small> A<small>UTHORITIES</small>

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 772d3 (2016) ..........................3

Frank H. Easterbrook, *The Chicago School and Exclusionary Conduct*,
    31 Harv. J.L. & Pub. Pol'y 439 (2008)..........................................................................3

Richard D. Cudahy & Alan Devlin, *Anticompetitive Effect*,
    95 Minn. L. Rev. 59 (2010)..........................................................................................3

Ronald A. Cass & Keith N. Hylton, *Preserving Competition: Economic Analysis,*
    *Legal Standards and Microsoft*, 8 Geo. Mason L. Rev. 1 (1999).............................. 3-4

iv

**INTRODUCTION**

In its Complaint, Viamedia repeatedly alleges (more than two dozen times) that Comcast "excluded" it from the Interconnects operated by Comcast Spotlight and that "access" to these Interconnects is essential to its ability to compete. Yet, for the reasons set forth in Comcast's opening brief, such a unilateral refusal to deal provides no basis for an antitrust claim. In a host of cases, the Supreme Court, the Seventh Circuit, and other federal courts have rejected such claims as a matter of law and upheld dismissals on the pleadings.

Faced with this plain deficiency, Viamedia attempts to recast the Complaint as asserting tying and exclusive dealing claims—despite not using the word "tying" anywhere in its 46-page Complaint, and despite not alleging any facts establishing anticompetitive tying or exclusive dealing. This maneuver fails because all of Viamedia's theories of antitrust liability are still premised on the same fundamental allegation—that Comcast refused to renew its contract with Viamedia. Viamedia also fails to establish the basic elements of such claims as a matter of law.

Next, Viamedia attempts to bolster its refusal to deal claim by relying upon *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). But Viamedia's own allegations and its Agreement with Comcast—in which Viamedia agreed to a time-limited contract that expressly permitted the conduct it now challenges—show how different this case is from *Aspen Skiing*. Viamedia also does nothing to rebut the overwhelming weight of authority indicating that *Aspen Skiing* is "unusual" and effectively limited to its facts. Indeed, Viamedia is unable to cite to *a single additional case* upholding a unilateral refusal to deal claim.

Ultimately, regardless of how they are labeled, all of Viamedia's antitrust claims are fundamentally flawed for the same reason: the underlying conduct Viamedia complains of is nothing more than healthy competition that is *encouraged*, not prohibited, by the antitrust laws. In taking Viamedia's arguments to their logical conclusion, Viamedia's attempted manipulation

1

of the antitrust laws becomes clear. Viamedia is asking this Court not only to compel Comcast

to deal with Viamedia *in perpetuity*, but also to *dictate the commercial terms* on which the

parties should deal, a remedy repeatedly and emphatically rejected by the Supreme Court and the

Seventh Circuit. Viamedia's Complaint should therefore be dismissed in its entirety.

## ARGUMENT

## I. VIAMEDIA'S ANTITRUST CLAIMS FAIL AS A MATTER OF LAW.

As established in Comcast's opening brief, the Complaint fails as a matter of law to state

an antitrust claim given the overwhelming legal precedent rejecting unilateral refusal to deal

claims. *See generally Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S.

398 (2004); Mem. 7-12.[1] In its opposition, it is notable what Viamedia does not dispute:

- Viamedia does not dispute that the antitrust laws impose no general obligation for a firm to deal with its rivals, and that the Seventh Circuit has held that exceptions to this rule are "rare." Mem. 9; Opp. 10.

- Viamedia does not dispute that (1) it signed a contract with Comcast Spotlight pursuant to which Spotlight represented Viamedia in the Chicago and Detroit Interconnects; (2) the contract expired on the day that Viamedia alleges it was "excluded" from these Interconnects; and (3) this contract expressly permitted Comcast Spotlight to compete to serve RCN and WOW in Chicago and Detroit upon its expiration. Mem. 9 (citing Agmt. § 9.10).[2]

---

[1] This brief uses the capitalized terms defined in Comcast's initial brief, which is referred to as "Mem." Viamedia's opposition brief is referred to as "Opp."

[2] As Viamedia admits, the Court may consider the Agreement notwithstanding Viamedia's failure to attach it to the Complaint so long as it is "central" to Viamedia's claims. Opp. 13 n.6. And Viamedia's argument that the Agreement is not "central" lacks merit. As Comcast has shown, the contract is central to numerous aspects of Viamedia's claims, including the terms and duration of Viamedia's participation in the Interconnects, and the parties' express intent concerning Comcast's right to compete with Viamedia after the contract expired. Viamedia argues that the Court should not consider the contract because Viamedia did not expressly mention it in the Complaint, but courts consistently reject such artful pleading efforts. *See, e.g., Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim had no merit"); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Fields v. Wilber Law Firm, P.C.*, 2003 WL 23094867, at *3 (C.D. Ill. July 22, 2003) ("[T]his Court may consider relevant documents included in a motion to dismiss if it determines that those documents were strategically omitted from a plaintiff's complaint.").

- Viamedia does not dispute that Comcast Spotlight, despite having no obligation to deal with Viamedia, offered to continue to do business with Viamedia in Detroit and Chicago after termination of the parties' contract, but that Viamedia *rejected* the offer. Mem. 11-12; Opp. 13 n.5.

- Viamedia does not dispute that (1) it never had contracts with any Comcast-controlled Interconnect outside of Chicago and Detroit; (2) it always competed against Comcast Spotlight outside of these two DMAs; and (3) it now competes against Spotlight in all DMAs at issue. Mem. 12.

- Viamedia does not dispute that replacing an intermediary with a direct relationship—which was the effect of Comcast's challenged conduct—is a "prototypical valid business purpose." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 124 (2d Cir. 2007).

Instead, Viamedia attempts to recast its refusal to deal claim as tying and exclusive dealing, while simultaneously attempting to fit its refusal to deal allegations to the facts of *Aspen Skiing*. As explained below, both lines of argument fail.[3]

A. **The Complaint Fails to State a Claim for a Unilateral Refusal to Deal.**

Faced with overwhelming precedent against its refusal to deal claim, Viamedia relies upon a single case: *Aspen Skiing*. But that case involved "unusual facts," *see Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 379 (7th Cir. 1986) (Posner, J.), and the Supreme Court has essentially limited *Aspen Skiing* to those facts by stressing that the case lies "at or near the outer boundary of Section 2 liability." *Trinko*, 540 U.S. at 409.[4] Viamedia cites

---

[3] Viamedia also contends that Comcast "does not deny" that Viamedia has properly alleged a relevant market, that it has monopoly power in that market, or that it acted with specific intent to monopolize. Opp. 6. Of course, Comcast disputes all of those allegations. Comcast expressly argued that the Complaint does not establish that it acted with anticompetitive intent. Mem. 10. As for the other allegations, they were not bases for the motion to dismiss, but Comcast will demonstrate that Viamedia cannot establish any of these elements of its claims at the appropriate time if necessary.

[4] Commentators also have recognized that *Aspen Skiing* no longer has any practical precedential force. *See, e.g.*, Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 772d3 (2016) ("The Supreme Court's opinion very severely limits the scope of unlawful unilateral refusals to deal under § 2 of the Sherman Act."); Frank H. Easterbrook, *The Chicago School and Exclusionary Conduct*, 31 Harv. J.L. & Pub. Pol'y 439, 442 (2008) (post-*Trinko*, duty to deal cases have "bit the dust"); Richard D. Cudahy & Alan Devlin, *Anticompetitive Effect*, 95 Minn. L. Rev. 59, 76 (2010) ("A dominant firm's obligation to deal with its rivals has been narrowed to the point that some question its ongoing relevance."); Ronald A.

*no other cases* where a court upheld a unilateral refusal to deal claim.  Even taking *Aspen Skiing* on its face, this case is distinguishable for multiple reasons.

### 1. Viamedia Expressly Agreed to Permit the Conduct It Now Challenges.

In its opening brief, Comcast showed that Viamedia's claims arise from conduct that it expressly agreed to permit upon expiration of the Agreement, contrary to the facts of *Aspen Skiing*.  Mem. 9-10.  Viamedia offers no serious response to this argument.  It cites no case where a court ignored an agreed-upon contract expiration to impose a duty on the parties to continue to deal in perpetuity.  By contrast, Comcast cited cases establishing that exercising a bargained-for contractual right to stop dealing with a competitor cannot establish liability under a duty-to-deal theory as a matter of law.  *See, e.g., Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1197 (10th Cir. 2009) (dismissing Section 2 claim because the defendant "should not be forever locked into a business decision made in 1990, especially when it took an affirmative step to preserve its future flexibility"); *Olympia Equip. Leasing Co.*, 797 F.2d at 376 ("If a monopolist does extend a helping hand, though not required to do so, and later withdraws it . . . does he incur antitrust liability?  We think not."); *WHDH-TV v. Comcast Corp.*, __ F. Supp. 3d __, 2016 WL 2858780, at *6 (D. Mass. May 16, 2016) ("Comcast's conduct—the non-renewal of WHDH's affiliation [contract]—cannot be construed as anticompetitive for the simple fact that WHDH had itself (years ago) bargained for a contract with an automatic expiration date and no right of first refusal.").

Viamedia unsuccessfully attempts to distinguish both *Christy Sports* and *WHDH-TV*.  Opp. 14 n.7.  Viamedia argues that, unlike in *Christy Sports*, the contract between Comcast and

---

Cass & Keith N. Hylton, *Preserving Competition: Economic Analysis, Legal Standards and Microsoft*, 8 Geo. Mason L. Rev. 1, 27 (1999) (*Aspen Skiing* "has been roundly criticized, and appellate courts have treated the [*Aspen Skiing*] doctrine as limited to the facts of that case").

Viamedia did not contain a "restrictive covenant, the exercise of which 'terminat[ed] the plaintiff's right to operate.'" *Id.* But it is undisputed that the contract in this case *did* contain a termination provision that "terminat[ed] the plaintiff's right" to participate in the Interconnects in Chicago and Detroit. There is no legal basis to distinguish between a restrictive covenant and a termination provision, when both give the defendant the right to stop doing business with the plaintiff. Viamedia attempts to distinguish *WHDH-TV* on the ground that the plaintiff's contract with Comcast "is what established its ability to *exist* as the local affiliate of" NBC (which Comcast owns), and Comcast "simply refused to renew the contract" and replaced the plaintiff with a Comcast-owned television station. *Id.* But *exactly the same thing* is true here: Viamedia's contract with Comcast is what gave Viamedia the right to participate in the Chicago and Detroit Interconnects. Comcast "simply refused to renew [Viamedia's] contract" and subsequently replaced Viamedia with Comcast Spotlight.

Viamedia also characterizes these contractual arguments as "semantic gamesmanship" because "the reality is that Comcast refused to renew the access of Viamedia's clients to the Interconnects[.]" Opp. 12; *see also id.* at 13 ("Comcast's unilateral decision to refuse to renew [Interconnect] access *under any terms . . . .*") (emphasis in original). Viamedia's characterization is directly contradicted by its own Complaint, which admits that Viamedia's former clients *do* participate in the Interconnects, and that Comcast *did* offer to renew the parties' Agreement but Viamedia rejected that offer. Compl. ¶¶ 122, 128 & 130; Opp. 13 n.5 & 15. Viamedia characterizes the offered terms as a "sham" and "commercially unreasonable," *id.*, but does not explain how this Court properly would determine whether or not terms of dealing between the parties are "commercially unreasonable." Mem. 11-12.[5] As *Trinko* emphasized,

---

[5] Indeed, Viamedia gives only one example of an allegedly commercially unreasonable term: the unilateral ability to assume control over the advertising inventory of Viamedia's MVPD clients. Compl.

courts are "ill suited" to determine such commercial terms and this is why courts are so reluctant to impose on a firm a duty to deal with a rival in the first place.  540 U.S. at 408.

Viamedia also argues that the Agreement "is immaterial because the right of access to the Interconnects *was not purely contractual*."  Opp. 13 (italics in original).  To the extent that Viamedia is suggesting that any MVPD or representation firm has ever participated in an Interconnect without contracting with its operator, that suggestion is unsupported by any allegation in Viamedia's Complaint.  To the extent that Viamedia is suggesting that it has a freestanding "right" to participate in Interconnects without entering into a contract, that suggestion is unsupported in the Complaint and runs contrary to the basic principles of antitrust law.  It would effectively impose a generalized duty to deal with competitors, contrary to the "the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal."  *Trinko*, 540 U.S. at 408 (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)).  There is simply no legal basis to turn Comcast's advertising business into some kind of public utility.

> 2.     **The Complaint Establishes that Viamedia
> and Comcast Have a History of Competition.**

Comcast's opening brief showed that the long history of competition between Viamedia and Comcast—to which the parties' cooperation in Chicago and Detroit was an *exception*—distinguishes this case from *Aspen Skiing*, where the prior pattern of cooperation between the parties was essential to the liability finding, as explained in *Trinko*.  Mem. at 9-10.

---

¶ 123.  But Viamedia does not explain why such a term is a "sham" or "unreasonable," and in fact Viamedia alleges that WOW agreed to a substantively identical term—WOW transferred to Comcast Spotlight "total control of all of WOW's Spot Cable Avail inventory for the Chicago and Detroit DMAs."  Compl. ¶ 128.  This fact further distinguishes this case from *Aspen Skiing*, in which the defendant would not even deal with its rival on the same terms on which it dealt with consumers.  *See Aspen Skiing*, 472 U.S. at 609-10.

6

In response, Viamedia admits the historical pattern of competition with Comcast that is demonstrated in its Complaint. But Viamedia asserts—without any support in its Complaint—that it is "evident" that the pattern resulted from attempts to reduce competition and harm Viamedia because Comcast acted to forego "short-run benefits" in not dealing with Viamedia outside Chicago and Detroit. Opp. 12. But even if true, that is irrelevant: after *Trinko*, a prior cooperative relationship is an *essential* element of a duty-to-deal claim; foregoing short-run benefits alone is insufficient. *See Novell Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074-75 (10th Cir. 2013) (prior course of dealing essential to a refusal to deal claim); *Covad Commc'ns v. BellSouth Corp.*, 374 F.3d 1044, 1049 (11th Cir. 2004) (same). Viamedia's rhetoric does not detract from the Complaint's demonstration that the parties' Agreement as to Chicago and Detroit was the anomaly, replicated nowhere else in the nation. Mem. 9-10. The decision in *Aspen Skiing* was premised upon "a decision by a monopolist to make an important change in the character of the market." *Aspen Skiing*, 472 U.S. at 603. Here, consideration of a "change in the character of the market" supports *Comcast*, not Viamedia. *Viamedia* is the one attempting to alter the *status quo*.

### 3. The Complaint Fails to Establish that Comcast's Alleged Conduct Was Irrational But For an Anticompetitive Effect.

As demonstrated in Comcast's opening brief, Mem. 10-11, the Complaint fails to establish that Comcast's decision not to renew the parties' Agreement was "irrational but for any anticompetitive effect," a required element of any refusal to deal claim under *Aspen Skiing*. *VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, 2015 WL 5693735, at *7, *9 (N.D. Ill. Sep. 28, 2015) (Dow, J.); *see also Novell*, 731 F.3d at 1075 (requiring "not just that the monopolist decided to forsake short-term profits," but also that "the monopolist's conduct must be irrational but for its anticompetitive effect"). No inference of irrationality can be drawn from the expiration, by its

express terms, of a nine-year agreement. As in *Christy Sports*, Viamedia was on notice that its contract relating to the Interconnects would end, and that Comcast had the option to compete against it in Chicago and Detroit, once the Agreement expired. *See Christy Sports*, 555 F.3d at 1197. Viamedia also disregards cases holding that there is no basis to infer any anticompetitive motive or effect from Comcast's ultimately successful attempt to replace an intermediary with a direct relationship, because such disintermediation is a "prototypical valid business purpose," *Port Dock & Stone*, 507 F.3d at 124, and courts have long considered eliminating middlemen to be *procompetitive* rather than anticompetitive. Mem. 14.

*        *        *

In sum, Viamedia's refusal to deal claim hinges entirely on a single case that courts and commentators now view with deep skepticism. And the "unusual facts" of that case are entirely distinct from the allegations here. Viamedia's refusal to deal claim should thus be dismissed.

### B. Viamedia Does Not Plead Harm to Competition and Lacks Antitrust Standing.

In its opening brief, Comcast showed that Viamedia has failed to plead injury to competition or to establish antitrust standing, because it pleads harm only to *itself*, not to competition (*e.g.*, in the form of price increases or output reductions). Mem. 12-14.[6] Among other things, Viamedia (1) implicitly concedes that it has not alleged any price increase or output reduction, Opp. 14; (2) explicitly concedes that RCN and WOW now participate in the Interconnects, Opp. 15; and (3) alleges facts establishing that Viamedia itself remains a vibrant competitor in the alleged market. Mem. 13-14. Nonetheless, Viamedia insists that it has pleaded

---

[6] Viamedia's conclusory assertions that Comcast has "stifl[ed] competition" (Opp. 14 (quoting Compl. ¶ 84)) should not be credited on this motion to dismiss. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Weber-Stephen Prods. LLC v. Sears Holding Corp.*, 2014 WL 656753, at *7 (N.D. Ill. Feb. 20, 2014) (dismissing Section 2 refusal to deal claim where the plaintiff pleaded no non-conclusory allegations of harm to competition).

8

harm to "the competitive process" by alleging that MVPDs lack the "choice" of a Spot Cable Advertising Representative that both participates in an Interconnect and is unaffiliated with a competing MVPD. Opp. 14. The alleged absence of this particular choice from the product offerings available to MVPDs does not constitute harm to competition. *See*, *e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012) (alleged reduction in "consumers' choices . . . does not sufficiently allege an injury to competition").[7]

Viamedia also lacks antitrust standing for another reason. In its opposition brief, Viamedia raises the specter of "the danger posed by making Comcast the sole marketer of its rivals' products." Opp. 12. But speculation about that "danger" is unaccompanied by any allegations of actual harm to competition. And this speculative concern relates to *MVPDs*, not Viamedia, which has no standing to assert claims on behalf of the MVPDs. Moreover, to the extent that Viamedia's claims are directed at "Comcast's exclusion of MVPDs from participation in Comcast-controlled Interconnects," Opp. 6, Viamedia similarly lacks standing to assert any such claims regarding exclusionary conduct directed at third-party MVPDs.

C.    **Viamedia Does Not Plead Anticompetitive Tying or Exclusive Dealing.**

Viamedia's tying and exclusive dealing theories fail because they are entirely dependent on its meritless refusal-to-deal claim, and because Viamedia fails to plead essential elements of anticompetitive tying or exclusive dealing conduct.[8]

---

[7] Even if Viamedia had pleaded actual injury to the MVPDs, it concedes, as it must, that it cannot bring claims on behalf of the allegedly harmed MVPDs. Opp. 15. Nor can Viamedia bring claims based on "access" to NCC. Viamedia's argument that its NCC allegations are ripe because they are part of Comcast's purported "overall course of anticompetitive conduct," Opp. 15, fails because the Complaint acknowledges Viamedia has and will continue to have a contract with NCC until the end of 2017, Compl. ¶ 145, and any allegations about what may happen after 2017 are purely speculative. Mem. 12.

[8] Viamedia contends that Comcast had "no excuse for failing to make its argument" against tying and exclusive dealing claims "in its opening brief." Opp. 9. But the Complaint does not plead any such claims. The word "tying" appears nowhere in the Complaint. Even a cursory glance at the very paragraphs Viamedia cites in support of its argument shows that Viamedia did not clearly allege tying or

1.      **<u>The Premise of Viamedia's Complaint Is a Unilateral Refusal to Deal</u>.**

In its Complaint, Viamedia repeatedly alleges that Comcast "excluded" it from Interconnects and that "access" to the Interconnects is essential for Viamedia to compete effectively.[9]  For Viamedia to obtain any relief, the Court *must* conclude that Comcast has a duty to deal with Viamedia and order Comcast to give Viamedia "access" to its managed Interconnects (on terms presumably set by the Court).  The Complaint states:  "In order to compete in this market and to sell Spot Cable Avails effectively, a representative firm [like Viamedia] *must have access* to the Interconnects and NCC on behalf of it clients."  Compl. ¶ 73 (emphasis added).  The Complaint seeks an order from this Court "[e]njoining Comcast from . . . any effort to exclude Viamedia or its MVPD clients from participating on a fair and open basis in Interconnects and NCC."  Compl. at 46 (prayer for relief).  All of this plainly amounts to an attempt to plead a unilateral refusal to deal claim no matter what label one puts on it.

Viamedia's invocation of the terms "tying" and "exclusive dealing" in its brief does not change that.  A party cannot evade the overwhelming case law disfavoring refusal-to-deal claims

---

exclusive dealing claims.  Compl. ¶¶ 2, 11-14.  By contrast, the Complaint is replete with duty-to-deal allegations (*see infra* n.9), and no matter what Viamedia calls its claims, they all depend on Comcast having a duty to deal with Viamedia.  *See infra* Point I.C.1.  It is perfectly appropriate for Comcast to address for the first time on reply theories not clearly made in the Complaint but asserted for the first time in an opposition brief.  *See Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 213 (N.D. Ill. 2008) (considering reply argument made "directly in response to new arguments raised in [other party's] opposition brief").

[9] *See, e.g.*, Compl. ¶ 10 ("Comcast has undertaken to fundamentally and anticompetitively change how Interconnects operate by *excluding competing third-party sales representatives like Viamedia* and their clients *from the Interconnects*.") (emphasis added); *id.* ¶ 11 ("*Comcast has excluded Viamedia* and its clients from the Interconnects in large DMAs, such as Chicago and Detroit, where Viamedia had previously participated in Interconnect sales for more than a decade.  In other DMAs, *Comcast has refused to allow Viamedia to participate* in Comcast-controlled Interconnects for purposes of representing Viamedia's clients.") (emphasis added); *id.* ¶ 84 ("Comcast has *threatened to exclude and has actually excluded* Viamedia and its MVPD clients from accessing the Interconnects and NCC") (emphasis added); *id.* at 46 (praying for an order "[e]njoining Comcast from engaging in the anticompetitive and tortious conduct alleged herein*, including any effort to exclude Viamedia* or its MVPD clients *from participating on a fair and open basis in Interconnects and NCC*") (emphasis added).

10

simply by referencing other legal labels and buzz words. "Traditional refusal to deal doctrine is not so easily evaded." *Novell*, 731 F.3d at 1079; *see also*, *e.g.*, *Weiss v. York Hosp.*, 745 F.2d 786, 815 (3d Cir. 1984) ("Antitrust policy requires the courts to seek the economic substance of an arrangement, not merely its form."). In *Novell*, the plaintiffs attempted to circumvent *Trinko* by "trying to recast [the defendant's] conduct as an 'affirmative' act of interference with a rival rather than a 'unilateral' refusal to deal." 731 F.3d at 1078. The Tenth Circuit rejected that attempt, holding that "[w]hether one chooses to call a monopolist's refusal to deal with a rival an act or omission, interference or withdrawal of assistance, the substance is the same and it must be analyzed under the traditional test [under *Trinko*] we have outlined." *Id.* at 1079.

In sum, all of Viamedia's claims hinge on Comcast having a duty to deal with Viamedia. For the reasons discussed above, Comcast has no such duty. This Court can dismiss the Complaint in its entirety on this ground alone without reaching the below arguments. Nonetheless, Viamedia comes nowhere close to pleading valid tying or exclusive dealing claims.

2. **Viamedia's "Monopoly Leveraging" Claim Fails As a Matter of Law.**

Viamedia quotes *Fishman v. Estate of Wirtz*, 807 F.2d 520 (7th Cir. 1986) for the proposition that use of a "monopoly in one market to foreclose competition in another" violates the antitrust laws. Opp. 1, 9. In its brief, Viamedia then explicitly rests both its tying claim and its exclusive dealing claim on the theory that Comcast has leveraged its alleged "exclusive control over the Interconnects" to secure a monopoly "over the representation of other MVPDs by foreclosing competition from firms such as Viamedia." Opp. 9.

But the Supreme Court held in *Trinko* that there could be no "monopoly leveraging" liability where, as here, the alleged anticompetitive conduct is a meritless unilateral refusal-to-deal claim. *See Trinko*, 540 U.S. at 415 n.4; *see also Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1222 (10th Cir. 2009) ("Where, as here, the only

11

possible candidate for anticompetitive conduct could be 'the refusal-to-deal claim we have rejected,' denominating one's claim as sounding in 'monopoly leveraging' won't do anything to save it.") (quoting *Trinko*, 540 U.S. at 415 n.4); *John Doe 1 v. Abbott Labs.*, 571 F.3d 930, 934-35 (9th Cir. 2009) (monopoly leveraging is not a viable theory without a duty to deal).

The Seventh Circuit has further confirmed that there is no Section 2 liability for a "free-standing" monopoly leveraging theory that lacks any underlying anticompetitive conduct. *Schor v. Abbott Labs.*, 457 F.3d 608, 611-13 (7th Cir. 2006) (affirming dismissal of complaint). Because Viamedia has failed to plead the elements of any antitrust claim, its monopoly-leveraging rhetoric adds nothing. In addition, *VBR Tours* dismissed refusal to deal and exclusive dealing claims based on *Schor*'s reasoning that "monopoly leveraging" cannot violate the antitrust laws because it cannot increase an alleged monopolist's profits. *VBR Tours*, 2015 WL 5693735, at *11, *13. Viamedia's claims fail for the same reason.

Viamedia's "monopoly leveraging" claim also fails as a matter of law because Viamedia has never asserted (in its Complaint or its opposition) that the Interconnects are themselves a relevant market, and has not even attempted to plead two *separate* relevant markets. To the contrary, as shown in the next section, the alleged relevant market for "Spot Cable Advertising Representative" services *includes* the Interconnects. Therefore, *Fishman*'s reference to the use of monopoly power in "one market" to affect competition in "another" market—and market-leveraging theory in general—is irrelevant on its face to Viamedia's leveraging theory, which does not involve two distinct alleged markets.

3.    **Viamedia Fails to State a Tying Claim.**

To state a tying claim, a plaintiff must allege: (1) there are two separate products in two separate product markets, *see Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 20-21 (1984); (2) the sale of one product (the "tying" product) is conditioned on the purchase of a

12

second product (the "tied" product); (3) the seller has sufficient economic power in the tying product market to restrain trade in the tied product market, *see id.* at 12-13; (4) a not-insubstantial amount of interstate commerce in the tied product is affected, *see id.* at 16; and, (5) foreclosure in the tied product market, *see id.* The deficiency of Viamedia's purported tying claim is further underscored by its failure (in either the Complaint or opposition brief) to fully address the essential elements of such a claim.

The opposition brief suggests that Comcast "conditions" the sale of Interconnect services on the purchase of other Spot Cable Advertising Representative services. Opp. 8. If that is so, then Viamedia's tying claim is deficient as a matter of law because Viamedia's own allegations establish that these services are part of the *same alleged product market*, rather than alleging that "two separate product markets have been linked." *Jefferson Parish*, 466 U.S. at 20-21; *see also*, *e.g.*, *Kaufman v. Time Warner*, __ F.3d __, 2016 WL 4578639, at *2 (2d Cir. Sep. 2, 2016) (holding that "the alleged tying product and tied product [must] be separate, *i.e.*, they must exist in separate and distinct product markets").

The Complaint alleges a single market for "Spot Cable Advertising Representation" services and defines this market as including firms that contract with MVPDs to obtain Spot Cable Avails and then resell these Avails to advertisers. *See* Compl. ¶ 72 (defining the services provided by Spot Cable Advertising Representation firms as "assum[ing] responsibility for [MVPDs'] Spot Cable Advertising for the purpose of marketing and selling their Spot Cable Avail inventory to national, regional, and local advertisers"). According to the Complaint, this is *exactly* what Comcast does when it operates an Interconnect. The Complaint alleges that Interconnect operators such as Comcast contract with MVPDs to obtain Spot Cable Avails and then resell the inventory to advertisers. *See* Compl. ¶ 35 (Interconnects "aggregate Spot Cable

13

Avails from the MVPDs in a DMA and sell packaged Avails to advertisers in such a way that the purchased advertisements will run on all MVPDs across a given DMA simultaneously."); *id.* ¶ 48 ("In each region, the existing Interconnect already controls all or close to all of the available Spot Cable Avail inventory . . . .").

The Comcast-Viamedia Agreement also confirms that Interconnect operators contract for control of Spot Cable Avails and sell the inventory to advertisers. That contract expressly provided that Comcast served as the "sole and exclusive" seller of RCN's and WOW's advertising to regional and national advertisers through the Interconnects. Agmt. § 2(a).

Because Interconnect operators do precisely what Cable Spot Advertising Representatives do, the alleged activities of Interconnects fall squarely within the *same alleged product market* and there can be no "tying" or "leveraging" as a matter of law.

4. **Viamedia Fails to State an Exclusive Dealing Claim.**

Vertical exclusive dealing arrangements are generally procompetitive and therefore presumptively legal. *See, e.g., Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 736–37 (7th Cir. 2004). Thus, a plaintiff challenging an exclusive arrangement must plead facts showing that the arrangement is anticompetitive, and that it forecloses competition in a substantial portion of the market. *See*, *e.g.*, *VBR Tours*, 2015 WL 5693735, at *12 (dismissing exclusive dealing claim where pleadings did not overcome the presumption of pro-competitiveness). Any exclusive dealing claim asserted by Viamedia in its Opposition fails because the Complaint establishes that exclusivity in the Spot Cable Advertising Representative business is the norm and Viamedia simply seeks to replace one allegedly exclusive deal (between an MVPD and Comcast) with another (between an MVPD and Viamedia).

In its Complaint, for example, Viamedia alleges that a Spot Cable Advertising Representative handles "all aspects" of an MVPD's sales of "their Spot Cable Avail inventory to

14

national, regional and local advertisers." Compl. ¶ 72; *see also id.* ¶ 74 ("Viamedia has long provided its MVPD clients with the necessary sales, marketing, and technology expertise and support to sell their Spot Cable Avails to local, regional, and national advertisers, including by accessing and participating in the Interconnects and NCC.").[10] It is clear from its allegations that Viamedia *wants* exclusivity—but just for itself, not for Comcast. That exclusivity is the norm is consistent with it being efficient and with the presumption that it is procompetitive.

Nor could exclusive dealing entail any independent injury to Viamedia. As observed above, Viamedia already has attributed all of its claimed injury to being unable to participate in the Interconnects as a result of the alleged refusal to deal. *See supra* Point I.C.1. This confirms, once again, that Viamedia's complaint boils down to a unilateral refusal to deal.

## II.     VIAMEDIA'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED.

Viamedia does not dispute that there are no relevant differences between Viamedia's state and federal antitrust claims, or that this Court should relinquish supplemental jurisdiction over the state law tortious interference claim if it dismisses the federal antitrust claims. (Mem. 15; Opp. 15.) These claims should therefore be dismissed for the reasons set forth above.

### CONCLUSION

For the foregoing reasons, and the reasons in Defendants' initial memorandum of law, the Court should dismiss the federal and state antitrust claims (Counts I-V) with prejudice and dismiss the state law tortious interference claim (Count VI) without prejudice.

---

[10] Viamedia's contract with Spotlight confirms that exclusivity is the norm. *See* Agmt. ¶ 9.10 (non-solicitation clause that prohibited Comcast from "directly or indirectly contact[ing] RCN or WOW for the purpose of negotiating with RCN or WOW to sell their advertising availabilities in the Chicago or Detroit DMAs" for the life of the contract).

Dated:    September 9, 2016

Respectfully submitted,

COMCAST CORPORATION AND
COMCAST SPOTLIGHT, LP


/s/ Ross B. Bricker
Ross B. Bricker
Sally K. Sears Coder
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel: (312) 222-9350
Fax: (312) 527-0484
rbricker@jenner.com
ssearscoder@jenner.com

Arthur J. Burke (*pro hac vice*)
David B. Toscano (*pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Tel: (212) 450-4000
Fax: (212) 701-5800
Arthur.Burke@davispolk.com
David.Toscano@davispolk.com

16

## CERTIFICATE OF SERVICE

I, Ross B. Bricker, an attorney, certify that on September 9, 2016, I caused the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be served on counsel of record listed below via the Court's ECF system:

> Britt Marie Miller
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, IL 60606
> (312) 782-0600
> bmiller@mayerbrown.com
>
> Mark W. Ryan
> Sean Patrick McDonnell
> MAYER BROWN LLP
> 1999 K Street N.W.
> Washington, DC 20006-1101
> (202) 263-3000
> mryan@mayerbrown.com
> smcdonnell@mayerbrown.com
>
> *Counsel for Plaintiff Viamedia, Inc.*

   /s/ Ross B. Bricker