IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Arcaya S. Dardon, o/b/o K. D., a minor ) ) ) | |
| Plaintiff, ) ) | Case No. 3:12-CV-50398 |
| vs. ) ) | |
| Carolyn W. Colvin, Acting Commissioner ) Social Security Administration, ) ) | |
| Defendant. ) ) | Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Arcaya Dardon, on behalf of her minor daughter K. D. (hereinafter, "Claimant"), brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying Claimant's application for supplemental security income ("SSI") benefits. This matter is before the court on cross-motions for summary judgment (Dkt. ## 13, 21). For the reasons set forth more fully below, Claimant's motion for summary judgment (Dkt. # 13) is denied and the Commissioner's motion for summary judgment (Dkt. # 21) is granted. The Commissioner's decision is affirmed.

**I. BACKGROUND**

A. Procedural History.

The Claimant, K. D., is a child under age 18. The Claimant's mother, Arcaya Shantele Dardon, protectively-filed an application for supplemental security income on behalf of the Claimant on May 7, 2009, alleging a disability onset date of August 11, 2006 (the Claimant's birth date), due to "premature, respiratory syncytial virus, and asthma." R. 52, 57. The application and request for reconsideration was denied. R. 52–53. The Claimant filed a timely request for a hearing on May 24, 2010. R. 66. Prior to the hearing, the Claimant adjusted her alleged disability onset date to the filing date, May 7, 2009. R. 32. The ALJ conducted a video hearing on March 17, 2011, in Evanston, Illinois. The Claimant's mother, Arcaya Dardon, testified at the hearing. R. 29. Counsel represented the Claimant at the hearing. R. 28.

---

[1]Commissioner Carolyn W. Colvin has been automatically substituted as the Respondent pursuant to Federal Rule of Civil Procedure 25(d).

On August 17, 2011, the ALJ issued a decision denying the claim for benefits. R. 10–23. On August 24, 2011, the Claimant filed a timely request to review the ALJ's decision. R. 101. On September 6, 2012, the Appeals Council denied the review, making the ALJ's decision the final decision of the Commissioner. R. 1–6. Thereafter, the Claimant filed this appeal pursuant to 42 U.S.C. § 405(g).

B. Hearing Testimony.

Arcaya Dardon was the only witness to testify at the Claimant's hearing on March 17, 2011. She testified that the Claimant, K. D., was four years old. R. 32. The Claimant was enrolled in the Rockford Public School System's early childhood program, and she was expected to begin kindergarten at age five. R. 34. Ms. Dardon testified that she believed the Claimant was disabled under the SSI childhood program because she had impairments related to her motor skills, learning development and language comprehension, and asthma. R. 33–34.

With regard to motor skill limitations, Ms. Dardon testified that while the Claimant was "potty trained" and could perform basic tasks such as climbing up on the sofa, she required help with other tasks such as putting on shirts, using zippers, and putting on shoes. R. 41–42. She walks on her tippy toes. R. 42. Ms. Dardon believes she has more difficulty riding tricycles than other children her age. R. 36. The Claimant's teachers expressed to Ms. Dardon that her motor skills progress was slow and she has difficulty tracing and writing with a pencil, as well as using scissors. R. 35.

With regard to learning development and language comprehension, Ms. Dardon testified that the Claimant is a very slow learner who easily becomes distracted and gives up on tasks. R. 36. She also testified, however, that according to the Claimant's teachers she was making progress, despite lagging in the area of language comprehension. R. 35. The Claimant works with speech and language therapists twenty to forty minutes per day. R. 45. Ms. Dardon herself "sometimes" understands the Claimant when she speaks. R. 42.

With regard to asthma, Ms. Dardon testified that signs of health problems were apparent immediately after the Claimant's birth, following which she remained in the hospital for two to three weeks before being released with a heart monitor. R. 37. The Claimant began developing breathing problems when she was approximately six months old, in March of 2007, at which time she was hospitalized at Rockford Memorial Hospital, diagnosed with RSV, and first prescribed treatment medications. *Id.* Following this testimony, the ALJ inquired as to whether the Claimant had required any additional hospitalizations since March of 2007. R. 38. Ms. Dardon testified that the Claimant was also hospitalized at St. Francis Hospital in March of 2009. R. 38–39. As the record did not include reference to a St. Francis hospitalization, the ALJ proposed to request those records with the Claimant's authorization. R. 39. The ALJ also inquired as to the Claimant's most recent emergency room visit for asthma, which Ms. Dardon testified occurred in March of 2010. R. 39–40.

Finally, Ms. Dardon testified that the Claimant's impairments were exacerbated by the

2

restrictions to her diet caused by her eczema and several allergies. R. 48. As a result of the Claimant's impairments, she had become a "loner" who did not wish to play with other children. R. 36, 42.

C. Post-Hearing Evidence.

Following the March 17, 2011 hearing, the ALJ attempted to obtain medical records pertaining to the Claimant's alleged hospitalization at St. Francis Hospital. Despite Ms. Dardon's testimony that the hospitalization occurred in 2009, the ALJ requested all records from January, 2010 to the present. St. Francis Hospital responded that "We have no information for the date(s) of service you have requested." R. 418. The ALJ entered the "no information" response into the record, along with an April 18, 2011 proffer letter to the Claimant. R. 197. The form letter included language that Plaintiff could request a supplemental hearing regarding the new evidence and that such a request would be granted "unless I receive additional records that support a fully favorable decision." *Id.*

Plaintiff responded that the ALJ had not requested the correct medical records: "At the hearing the mother testified that she was hospitalized in 4/09, and the request sent stated 1/10 to the present. I will try and produce these records as soon as possible and would request a supplemental hearing with a medical expert to testify." R. 200. Plaintiff apparently did not locate hospitalization records from 2009, but did ultimately submit medical records for a February 7, 2008 St. Francis Hospital emergency room visit, which were entered into the record before the ALJ's decision. R. 423–37.

D. The ALJ's Decision and Supporting Evidence.

In making his decision, the ALJ noted there was no opinion from a treating physician in the record, and he largely adopted the April, 2010 opinions of the state agency specialists (one physician and one speech/language pathologist). R. 16, 361–66. He also supported his decision with evidence in the record, including Ms. Dardon's testimony and records submitted following the state agency opinions.

First, the ALJ found that the Claimant had not engaged in substantial gainful activity since May 7, 2009. R.13.

Second, the ALJ found that the Claimant had the following severe impairments: asthma, eczema, developmental delays, and speech delays. *Id.*

Third, the ALJ found that the Claimant's impairments did not meet or equal one of the listed impairments. *Id.* First, the ALJ generally examined whether the evidence in the record supported Ms. Dardon's testimony that the Claimant was severely impaired. The ALJ noted that the Claimant had one hospitalization and one emergency room visit for asthma before the alleged onset date of May 7, 2009. R. 15. Following the alleged onset date, the Claimant had no hospitalizations and only one emergency room visit for asthma in March of 2010, two years

3

before the decision. *Id.* Furthermore, most of the Claimant's treatment notes since the alleged onset date reflected normal breath sounds and asthma that was mainly well-controlled on medications. *Id.* The ALJ noted that the Claimant's eczema required attention to diet, but did not require medically-dictated physical or nonexertial limitations or more intense hospital-based treatment. *Id.* The ALJ also found that evidence in the record tended to show that the Claimant did not require intensive school support and was repeatedly described as social and with good eye contact, belying the likelihood of marked development or communication delays. *Id.* at 16.

Finally, the ALJ evaluated the six functional equivalence domains regarding whether a claimant's combination of impairments functionally equals the listings, largely relying on the state agency specialist opinions. The ALJ found that the Claimant had less than marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in acquiring and using information, no limitation in the ability to care for herself, and less than marked limitation in health and physical well-being. R. 16–22. Because a claimant's combination of impairments must result in marked limitations in two or more domains of functioning or an extreme limitation in one domain to functionally equal the listings, the ALJ concluded that the Claimant was not under a disability. R. 22.

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399–401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

## III. DISCUSSION

Plaintiff argues that the Commissioner's decision denying her application for SSI should be reversed or remanded for two reasons. Plaintiff asserts that the ALJ: 1) improperly failed to have a medical expert testify at her ALJ hearing; and 2) deprived her of a supplemental hearing

4

after new evidence was entered into the record, in violation of HALLEX I-2-5-28.[2] Neither of Plaintiff's arguments to this court justify reversal or remand.

A. Medical Expert Testimony Was Not Required.

Plaintiff claims that a remand is necessary because the ALJ failed to develop the record by ordering medical expert testimony at the hearing, which she contends was necessary for the ALJ to provide an informed basis for determining whether she was disabled. *See* (Dkt. # 13, at 7) (citing *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000)). She generally claims that medical expertise was necessary before the ALJ finding that medications controlled her asthma because she had nine medical visits for asthma between September 3, 2008 and December 22, 2010.[3] She also claims that medical expertise was required to resolve perceived inconsistencies in the record regarding her developmental delays.

As a preliminary matter, while social security adjudications are not purely adversarial, a broad and unspecific claim that medical testimony was required is generally not persuasive where a represented claimant made no attempt to obtain expert testimony at the hearing. The claimant and ALJ do share responsibilities for building the record, but it is the claimant's burden to submit medical evidence to prove her disability. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (quoting 42 U.S.C. 423(d)(5)(A)) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."); *Scheck v. Barnhart*, 357 F.3d 697, 701–02 (7th Cir. 2004) ("[C]laimant bears the burden of supplying adequate records and evidence to prove their claim of disability."). This is especially true where a claimant is represented by counsel, because the Seventh Circuit permits the ALJ to assume a claimant represented by counsel is making their strongest case for benefits. *See Wilkins v. Barnhart*, 69 F. App'x 775, 781 (7th Cir. 2003); *see also Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (particularly in counseled cases, the claimant bears the

---

[2]In her brief, Plaintiff briefly raises other claims of errors which are either undeveloped or demonstrably false. In explaining the "whole child" approach, Plaintiff faults the ALJ for "never even refer[ring] to this new approach, or its ramifications in her decision." (Dkt. # 13, at 5). This is flatly contradicted by the ALJ's express description of and reliance on the "whole child" approach in his opinion. R. 14. Another argument raised in Plaintiff's brief consists of an out-of-context block quote from the ALJ's discussion of credibility with her commentary that "This really doesn't say anything substantively." (Dkt. # 13, at 6). To the extent this can be construed as a challenge to the ALJ's credibility analysis, the court finds the argument forfeited as cursory and wholly undeveloped. *See Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (perfunctory and undeveloped arguments that are unsupported by pertinent authority are forfeited on appeal).

[3]As the government accurately notes, many of the visits Plaintiff points to are routine follow-up appointments in which her treating physicians specifically note that her asthma is well-controlled with medication. *See* R. 244, 279.

burden to introduce objective evidence that the ALJ should have developed the record further). Counsel should not sit silently at a hearing, fingers crossed, hoping for an ALJ error. Instead, they should zealously advocate for their clients. In doing so, counsel should identify alleged errors to the ALJ so that if an error truly occurred, the ALJ can promptly rectify the error. Waiting years to raise an alleged error on appeal does not further an applicant's interest.

Moreover, the Seventh Circuit "recognize[s] that, because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). And courts generally recognize that an ALJ should call a medical expert only if necessary. *See Holladay v. Bowen*, 848 F.2d 1206, 1209–10 (11th Cir. 1988); *Richardson v. Astrue*, 2012 WL 4467566, at *8–9 (S.D. Ind. Sept. 26, 2012) (unpublished decision) (no error in failing to call medical expert when no showing that the ALJ disregarded evidence or failed to explain reasoning).

Even when medical expertise is required, testimony may not be necessary where, as here, the record is sufficiently developed with the opinions of state agency professionals who have reviewed all of the evidence. It is appropriate for an ALJ to rely on the opinions of physicians and other specialists who are also experts in social security disability evaluation. 20 C.F.R. § 416.927(f)(2)(1) (2000). The fact that these specialists reviewed the entire record strengthens the weight of their conclusions. *See Hudson v. Barnhart*, 345 F.3d 661, 667 (8th Cir. 2003). For these reasons, courts have found that when an ALJ relies on a state agency to support medical findings, the holding of *Green* (the only case cited by Plaintiff in her motion) is not applicable. *See X.A.D. v. Astrue*, 2012 WL 4481343, at *8 (S.D. Ind. Sept. 28, 2012) (unpublished decision); *see also Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). Because the ALJ here appropriately considered and ultimately relied on the state agency specialists' opinions in making his decision, medical expert testimony was not required.

B. A Supplemental Hearing Was Not Required.

Plaintiff also contends that a remand is required because the ALJ violated provision I-2-5-28 of the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") when he failed to afford her a supplemental hearing in connection with St. Francis Hospital's "no information" response. The government counters that to accept Plaintiff's position would elevate form over substance, as she herself ultimately obtained and submitted the correct St. Francis Hospital medical records that the ALJ considered in his decision. The court agrees.

Plaintiff argues that the ALJ's April 18, 2011 proffer letter, proposing to enter St. Francis Hospital's "no information" response into the record, triggered HALLEX I-2-5-28, which provides in relevant part that "[i]f an ALJ receives new evidence after the hearing from a source other than the claimant or representative, if any, and the ALJ proposes to enter the evidence into the record as an exhibit, the ALJ will follow the procedures in HALLEX I-2-7-30[.]" HALLEX I-2-7-30 in turn provides in relevant part that the ALJ "must proffer all posthearing evidence,"

6

allow the claimant to request a supplemental hearing, and "[i]f the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." The April 18th proffer letter echoes this language, and thus it is reasonable to assume that the ALJ believed the HALLEX I-2-7-30 procedures applied to the "no information" response. But even if the ALJ ultimately deviated from the HALLEX guidelines by not granting Plaintiff's request for a supplemental hearing, Plaintiff still must show that the violation justifies a remand.

The Seventh Circuit has not yet ruled on whether an ALJ's deviation from the HALLEX guidelines can entitle a claimant to relief in the form of reversal or a remand. *See Davenport v. Astrue*, 417 F. App'x. 544, 547 (7th Cir. 2011); *Cromer v. Apfel*, 234 F.3d 1272, at *2–3 (7th Cir. 2000) (unpublished decision). The court in *Davenport* noted that other Circuits are split on the issue. The majority hold that HALLEX guidelines do not create any enforceable rights. *See, e.g. Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010); *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 618 n. 4 (6th Cir. 2010); *Power v. Barnhart*, 292 F.3d 781, 785–86 (D.C. Cir. 2002); *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir.1998). In contrast, the Fifth Circuit has held that prejudicial violations of HALLEX can entitle a claimant to relief. *See Shave v. Apfel*, 238 F.3d 592, 596–97 (5th Cir. 2001).

Plaintiff apparently would have this court adopt another approach and hold that any technical deviation from HALLEX entitles a claimant to a remand, regardless of prejudice. In her motion, Plaintiff does not attempt to explain how a supplemental hearing regarding the "no information" response could possibly benefit her. As the Government accurately responds, a supplemental hearing was unnecessary in this case because Plaintiff herself ultimately supplied the missing St. Francis Hospital medical records that the ALJ was seeking. Plaintiff's terse reply is telling: "The simple answer to the HALLEX argument is that I already requested a supplemental hearing" before supplying the records. (Dkt. # 22, at 1). In other words, because HALLEX I-2-7-30 technically mandates that a request for a supplemental hearing be granted whenever the ALJ proffers post-hearing evidence, this court should automatically remand without regard for whether such a hearing would serve any useful function. The court declines to adopt Plaintiff's proposal, which would go beyond any recognized approach and unnecessarily elevate form over substance.

Even applying the Fifth Circuit's approach, it is clear that Plaintiff was not prejudiced and is therefore not entitled to relief. Because Plaintiff appeared to suggest in her supplemental hearing request that it would be appropriate for "a medical expert to testify," R. 200, it is worth noting that the purpose of a supplemental hearing is not to broadly revisit the issue of disability and afford Plaintiff a second bite at the apple with expert testimony unrelated to the newly proffered evidence. HALLEX I-2-6-80, titled "Continued or Supplemental Hearing," clarifies that the limited scope of a supplemental hearing as contemplated by HALLEX I-2-7-30 is to allow "cross-examination of the author or provider of post-hearing evidence [when] requested." The only post-hearing evidence not submitted by Plaintiff herself was St. Francis Hospital's "no information" response. Given that Plaintiff herself explained that the reason for this response was that the ALJ requested the wrong dates, a hearing to further examine the "no information"

response would have served no purpose other than to restate the obvious and waste judicial resources. Thus, Plaintiff is not entitled to relief and the ALJ's judgment is affirmed.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (Dkt. # 13) is denied, and the Commissioner's motion (Dkt. # 21) is granted.

Date: April 27, 2015                                 ENTER:_____
                                                                 U.S. Magistrate Judge Iain Johnston